IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-01268-WYD-MEH

GEORGE FARMER (a/k/a GEORGE L. FARMER),

> Plaintiff,

v.

BANCO POPULAR OF NORTH AMERICA;
JOHN DOES 1-100,

> Defendants.

---

## ORDER

---

I.    INTRODUCTION AND BACKGROUND

This matter is before me on Banco Popular North America's Motion for Attorneys'
Fees and Costs (ECF No. 215).  Defendant Banco Popular ("Banco") moves for its
reasonable attorney fees and costs pursuant to 27 U.S.C. § 1927 and the Court's
inherent authority to impose sanctions.  On May 15, 2014, I held a hearing on the
motion.  Banco seeks attorney fees in the amount of $56,944.38 and costs in the
amount of $11,617.77, representing amounts incurred from July 2, 2012, the date the
settlement agreement was emailed to Plaintiff Farmer, through May 15, 2014, the date
of the most recent hearing.  For the reasons stated below, Banco's motion is granted in
part and denied in part.  Banco is awarded attorney fees and costs, but I reduce the
amount of requested fees.

This matter has a complicated and tortured history that has been set forth in
numerous prior orders.  On February 21, 2014, the Tenth Circuit Court of Appeals

issued a written opinion affirming my judgment and denying all appellate relief sought by

Farmer.  The following succinct yet complete background is taken from the Tenth

Circuit's Order and Judgment:

> In 2001, Farmer's father obtained a $150,000 home equity line of credit (HELOC) secured by a house in New Jersey, one block from the ocean.  Farmer's father died in 2002, and Farmer was the sole heir and executor of his father's estate.  After his father died and until 2010, Farmer wrote a series of checks to himself against the HELOC, allegedly in his capacity as executor and to reimburse himself for maintenance costs he paid on the property securing the HELOC.  Farmer also made some payments towards the HELOC, but at the time he filed the case underlying this appeal, there was an outstanding balance of approximately $144,000.

> In 2010, Farmer wrote a $5,000 check to himself against the HELOC and deposited it into his Wells Fargo account.  Banco Popular initially honored the check, but after an investigation into past-due payments, the bank determined that Farmer was accessing his deceased father's HELOC and allegedly threatened Farmer with charges of criminal fraud if he did not pay off the full amount owed on the HELOC.  Banco Popular also closed the HELOC and returned the $5,000 check, allegedly informing Wells Fargo that the check was counterfeit.  This caused Wells Fargo to close Farmer's account and his daughter's account.

> Farmer then filed an action against Banco Popular in Colorado state court, alleging twelve claims for relief.  He sought damages and a judgment that the HELOC be voided.  Banco Popular removed the action to federal court and initiated foreclosure proceedings on the New Jersey property.  The parties had multiple settlement conferences with Magistrate Judge Hegarty, who held a hearing on June 15, 2012, and placed the terms of a settlement agreement on the record.  The relevant terms were that Banco Popular would pay Farmer $30,000 and forgive some principal, unpaid interest, and attorney's fees.  Farmer would give Banco Popular a deed in lieu of foreclosure that the bank would hold in escrow pending Farmer's repayment of $137,380.94 to Banco Popular, which was to be funded by either the sale of the New Jersey house or refinancing the HELOC with another lender.  Banco Popular would return the deed in lieu if Farmer made the repayment by October 15, 2012, but could record it or pursue foreclosure or other remedies if he did not.  Farmer agreed to waive defenses to the foreclosure action and give Banco Popular a complete release, and the parties agreed to dismiss the federal action without prejudice.  In order to avoid tax consequences, Farmer wanted

Banco Popular's $30,000 payment to him to be characterized as a loan and he did not want the bank to issue an IRS Form 1099 showing cancellation of debt.  But the magistrate judge suggested that the parties do whatever the tax laws require and make no representations in the agreement about the tax consequences of the settlement.  The parties agreed with that suggestion.

The same day as the hearing, Banco Popular sent Farmer a draft settlement agreement and IRS Form W-9, Request for Taxpayer Identification Number and Certification.  With regard to taxes, the agreement stated that the bank was forgiving amounts due on the HELOC and was making no representations regarding the tax consequences of the settlement.  The agreement did not include the deed in lieu of foreclosure or a satisfaction of the mortgage, each of which required review by a New Jersey title company.  Farmer completed and signed the W-9 the same day and returned it to Banco Popular, but he began to negotiate a number of the other terms of the draft agreement, none of which had to do with the tax issue.  Banco Popular rejected most of those changes.  On July 2, Banco Popular sent Farmer the completed settlement agreement, but Farmer sought changes to the exhibits.  On July 27, the parties filed a joint motion stating they had settled on June 15 and were awaiting further information from the title company regarding Farmer's requested changes.

After Farmer received the revised exhibits, he again sought more changes, including the amount, timing, and structure of the payment.  Apparently, due to the length of time it took for the title company to complete its review, Farmer no longer needed the $30,000 upfront payment, and he offered several options for paying Banco Popular either $95,000 or $107,000.  On August 7, Banco Popular declined those requests, stating it would file a motion to enforce the settlement agreement unless Farmer tendered the executed agreement before a court hearing scheduled for the next day.  In an August 8 email to Banco Popular's counsel, Farmer stated that he was in agreement with the last version of the Settlement Agreement.  But Farmer challenged the request that, because the estate had not been closed within one year, he had to sign the attached real estate documents in his capacity as heir and executor.  The parties' further discussions proved fruitless, so Banco Popular filed a motion to enforce.  In a response filed August 20, Farmer stated that "[t]he Settlement Agreement as drafted is fine," and in fact he asked the court to "enforce the Settlement Agreement only (pursuant to the terms that were placed on the record on June 15, 2012)" and extend his repayment date by two months.  But he again insisted that the real estate documents be revised to show that he was signing them only in his capacity as executor of his father's estate.

The magistrate judge held a conference on August 29. Correspondence from that same day shows that Farmer now sought to reduce his net payment from $107,380.34 to $100,000 but pay it by October 1 instead of October 15. Banco Popular declined that offer, stating that it required payment by October 15 of the full net amount, which had never changed since the June 15 hearing. The magistrate judge held another hearing on September 10, at which Farmer stated that "we all are in agreement to enforce the settlement," and "the only thing that remains is . . . the date that [my payment is] due." None of the terms of the agreement were read into the record, but the parties agreed that Farmer would pay Banco Popular $107,380.34 by November 15, 2012. Banco Popular sent Farmer an agreement reflecting the new amount and due date, but instead of signing, Farmer asked for changes and additions. Banco Popular refused most of those changes and asked Farmer to sign the revised agreement, which he never did.

On November 13, two days before his payment was due, Farmer sought to add a liquidated damages provision and a paragraph stating that Banco Popular would not issue Form 1099. He also sought a six-week extension on his due date because Hurricane Sandy, which struck the New Jersey coast on October 29, had delayed an expected loan from a cousin that would finance his payment. Banco Popular responded that it would extend the deadline only if Farmer would sign the agreement without his other proposed changes. He refused, and Banco Popular filed a second motion to enforce and attached a written agreement reflecting the parties' agreement as of the September 10 hearing (the "Revised Agreement"). Farmer responded that the parties had agreed to a settlement on September 10, and he explained his financing troubles. He sought a 45-day extension, the inclusion of a provision that Banco Popular would not issue Form 1099, and a mutual and immediately effective release (the Revised Agreement provided that Farmer's release would be effective upon signing and Banco Popular's release effective upon Farmer's payment).

On December 4, 2012, the magistrate judge held an evidentiary hearing on the second motion to enforce and issued a recommendation that it be granted. He rejected the notion that Farmer's obligation to pay was contingent on obtaining financing, noting that there were several hundred thousand dollars in equity in the New Jersey property. Farmer objected to the recommendation. In response to an order for clarification from the district judge, the magistrate judge issued a supplemental recommendation stating that he recommended enforcing the Revised Agreement. Farmer filed objections to the supplemental recommendation.

The district judge then held an evidentiary hearing at which the

magistrate judge testified and the parties argued at length.  The district judge ruled that he would enforce the Exhibit K agreement, observing that Farmer had twice indicated his agreement with Exhibit K.  He ordered Banco Popular to pay Farmer $30,000 within 30 days, Farmer to pay Banco Popular $137,380.84 within 60 days, and the parties to file dismissal documents within 75 days.  He warned that he would impose the most severe sanctions and penalties if the parties did not comply with his order.  At the hearing, the district judge declined Banco Popular's request that he order the parties to sign the agreement absent some authority for such an order.  But he did rule that the terms of the settlement and release would be in full force and effect by court order.

Banco Popular timely made its $30,000 payment, but Farmer never made his payment.  Instead, he filed a post-judgment motion and then this appeal.  Banco Popular filed a motion asking the district court to (1) issue a rule to show cause why Farmer should not be held in contempt for failing to make his payment, (2) order the parties to sign the Exhibit K agreement and its exhibits, and (3) order Farmer to pay attorney's fees. The district court denied Farmer's post-judgment motion and Banco Popular's motion, both without prejudice to refiling pending the outcome of this appeal.

*Farmer v. Banco Popular of North America*, --- Fed. Appx. ---, No. 13-1252, 2014 WL 661476, at *1 (10th Cir. February 21, 2014).

II.   ATTORNEY FEES

A.   Whether an Award of Attorney Fees is Warranted

In general, prevailing litigants in American courts are not entitled to collect attorney fees from their opponents.  *Alyeska Pipeline Svc. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1980).  However, Congress and the courts have made exceptions to this "American Rule," which allow for the recovery of attorney fees.  *Id.* at 257-59.  Banco argues that this case falls under two exceptions to the rule.  Under the first exception, 28 U.S.C. § 1927, a court may award attorney fees when, "an attorney . . . multiplies the proceedings in any case unreasonably and vexatiously." *Id.*  Sanctions under § 1927 are appropriate when an attorney acts in an  "objectively unreasonable" manner.

*Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008).  The goal of § 1927 is to ensure that attorneys "regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims."  *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006).  Under the second exception, a court may exercise its inherent authority to award fees against litigants who have acted in bad faith.  *See Righthaven LLC v. Hill*, No. 11-00211, 2011 WL 4018105, at *4 (D.Colo. Sept. 9, 2011).

For reasons stated on the record at the May 15, 2014 hearing and set forth in this Order, I award Banco attorney fees under both § 1927 and my inherent powers. Consistent with the findings of both Magistrate Judge Hegarty and the Tenth Circuit Court of Appeals, I conclude that there is substantial evidence that Farmer, a licensed attorney, multiplied proceedings unreasonably and vexatiously and engaged in bad faith.[1]  After months of settlement negotiations with Magistrate Judge Hegarty where the parties finally reached an agreement, Farmer refused to sign the settlement agreement and instead filed frivolous pleadings and stalled the litigation in an attempt to gain a more favorable settlement.[2]  Additionally, at the second evidentiary hearing held on May

---

[1] While Farmer, a licensed attorney, appeared *pro se* throughout the majority of this case, he remains subject to the requirements set forth in § 1927.  *See Marrese v. Duncan*, No. 08-cv-00143, 2008 WL 398862, *1 (D.Colo. Feb. 11, 2008).  Farmer represented himself until the most recent hearing on the issue of attorney fees held on May 15, 2014, where he appeared with counsel.  However, for purposes of § 1927, I only consider Farmer's conduct in this Order, not the conduct of his newly-retained counsel.

[2] For example, after agreeing to a settlement, Farmer: (1) objected to Banco's motion to enforce settlement, causing briefing and requiring judicial review by Magistrate Judge Hegarty; (2) objected to Magistrate Judge Hegarty's recommendation enforcing the settlement, causing more briefing and an evidentiary hearing before me requiring Magistrate Judge to testify and Banco's counsel to travel to Denver, CO; and (3) filed a motion to reconsider my ruling to enforce the settlement agreement, causing

14, 2013, after carefully reviewing the voluminous record and considering the parties'

arguments, I determined that Farmer was engaging in "mischief" and that his arguments

were "nonsensical." (ECF No. 181, Hr'g Tr. 70:6-71:2, May 14, 2013). When Farmer

failed to respond to my questions regarding when he would have funds available for the

settlement, I concluded that "what that illustrates to me is that [Farmer's conduct] was a

sham . . . to avoid a trial on the merits." (ECF No. 181, Hr'g Tr. 63:19-21).

Also at the May 14, 2013 hearing, Magistrate Judge Hegarty questioned whether

he believed Farmer acted in good faith during the settlement negotiations when he

testified as follows:

> Q (By Mr. Farmer): And, Judge, I don't mean to make that as a criticism.
> I'm merely saying that all of the - - both the parties and the Court, at that
> point in time, were working together, and putting forth a good-faith effort in
> trying to come to some kind of a resolution, and at that point in time, we all
> thought we had a resolution of the issues. Would you agree with that?
>
> A [by Magistrate Judge Hegarty]: Would I agree with which part of that
> question?
>
> Q: If you disagree with anything in that question.
>
> A: I have a potential disagreement on the good-faith part.
>
> ***
> Q [By Mr. Shivpuri]: Just one quick question. At the end of your
> discussion with Mr. Farmer, you said you did have a disagreement about
> the good-faith part of your settlement on September 10th.
>
> A [By Magistrate Judge Hegarty]: Well, good-faith is a - - it's sort of in
> the eyes of the beholder. Judges and lawyers interpret that differently.
> What I was referring to was, one of the initial conversations I had with Mr.
> Farmer, when he told me he was a lawyer and, in fact, he had mediated
> cases, and he believed he was a good mediator, and that he could always
> get a little more from you. And so I think at every point in this case, I have

─────────────────────

more briefing and judicial review.

seen Mr. Farmer act in accordance with that.  He always wants just a little more.  Just a little bit better deal for him, and he thinks that if he stalls, holds on, that he can get a little better each time.  And so whether that's good faith or bad faith, it's a question I have.

(ECF No. 181, Hr'g Tr. 45:16-25, 48:20-49:8).

Moreover, in its Order and Judgment affirming my order and denying Farmer's

appeal, the Tenth Circuit Court of Appeals unequivocally stated that

> [t]hough in receipt of $30,000 and having agreed to settle the case, Farmer continues to use the New Jersey property (with a value far in excess of the disputed amount) with no payment to Banco Popular, which is prevented from foreclosing on the property.  Rather than adhering to the terms of the settlement agreement, Farmer has multiplied the proceedings, causing the court to expend considerable effort, Banco Popular to incur attorney's fees, and delaying the ultimate resolution.  The judgment of the district court is affirmed.  The district court has all lawful authority to bring this matter to a prompt and just conclusion.

*Farmer*, 2014 WL 661476, at *7.

Given the Tenth Circuit's holding that I have "all lawful authority to bring this

matter to a prompt and just conclusion" *id.*,  I find that Farmer's bad-faith conduct in

refusing to sign the settlement agreement and unreasonably prolonging this litigation

caused both Banco to incur unnecessary expenses and waste the resources of this

Court.  Thus, I find that the award of attorney fees under both § 1927 and my inherent

powers is warranted.  Thus, I turn to the issue of the appropriate amount of attorney

fees.

B.   Amount of Fees Awarded

"The most useful starting point for determining the amount of a reasonable fee is

the number of hours reasonably expended on the litigation multiplied by a reasonable

hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "This calculation

provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* In other words, "[t]o determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quotations omitted). "The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" *Id.* (quotation omitted). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. The Tenth Circuit has noted that "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998).

Once the court has adequate time records before it, "it must then ensure that the winning attorneys have exercised 'billing judgment.'" *Case*, 157 F.3d at 1250 (quoting *Ramos v. Lamm*, 713 F.2d 545, 553 (10th Cir. 1983). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Id.* (citing *Ramos*, 713 F.2d at 553-54) (giving as an example time spent doing background research); *Hensley*, 461 U.S. at 434, 437 (expecting counsel to exercise their "billing judgment", "mak[ing] a good faith effort to exclude from a fee request hours that are

excessive, redundant, or otherwise unnecessary").

        1.    <u>Reasonable Hourly Rate</u>

Turning to my analysis, I first consider the reasonableness of the hourly rates

charged by Banco's counsel who worked on this case.  As to the hourly rate, the Tenth

Circuit indicates that "the court must look to 'what the evidence shows the market

commands for civil rights or analogous litigation.'"  *Burch v. La Petite Academy, Inc.*,

2001 WL 589461, at *2 (quoting *Case*, 157 F.3d at 1243).  The "local market rate" is

usually the state or city in which counsel practices.  *Ellis v. Univ. of Kansas Medical

Center*, 163 F.3d 1186, 1203 (10th Cir. 1998) (looking at "the prevailing market rates in

the relevant community"); *Case*, 157 F.3d at 1256 (looking at fees charged by lawyers

in the area in which the litigation occurs).

Here, it does not appear that Farmer disputes the reasonableness of the rates

charged by Banco's counsel which range from $224.20-$275.20 per hour.  Because

Banco provided evidence that $224.20-$275.20 per hour is a reasonable rate for

attorneys of similar background and experience as Banco's counsel, I find the hourly

rates requested to be reasonable.

        2.    <u>Reasonable Number of Hours</u>

Banco's counsel assert that they spent a total of 231.35 hours working on this

case.  (ECF No. 214-1).  Farmer contends that these hours should be reduced for

duplicative, excessive, vague, and unnecessary billing.  D.C.COLO.L.Civ.R 54.3.B.1

requires Banco to include "a detailed description of the services rendered . . . for each

person for whom fees are claimed."  *See Hensley*, 461 U.S. at 433 (stating that the

party seeking an award of fees should submit evidence supporting the hours worked

and rates claimed).

Though not required to do so, I conducted a painstaking review of Banco's counsel's billing statement.  *See Am. Water Dev.*, 874 P.2d 352, 387 (Colo. 1994) (recognizing that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application).  For reasons stated on the record at the May 15, 2014 hearing and in this Order, I do find merit in Farmer's argument that the fee request should be reduced to exclude all billing entries related to the appellate proceedings.

Thus, based on my judicial experience and careful consideration of the evidence and governing law, I find that Banco's claimed number of hours expended (excluding the hours billed for appellate work) are reasonable.  Therefore, I find that a reduction of 5.3 hours is appropriate.  (ECF No. 214-8).  This results in a reduction of $15,482.62 from the requested amount of fees.

III.     COSTS

Banco also requests $11,617.77 in recoverable costs.  After my careful review, I find Banco's requested costs to be reasonable and necessary litigation expenses.  For the reasons stated on the record at the May 15, 2014 hearing and set forth in this Order, I find all of the expenses for which Banco's counsel seeks reimbursement to be those that would normally be billed to a private client.  *See Ramos*, 713 F.2d at 559.  Accordingly, I award Banco $11,617.77 in recoverable costs.

IV.     CONCLUSION

Based on the foregoing and for reasons stated on the record at the May 15, 2014 hearing, it is

ORDERED that Banco Popular North America's Motion for Attorneys' Fees and

Costs (ECF No. 215) is **GRANTED IN PART AND DENIED IN PART**.  Pursuant to the

28 U.S.C. § 1927 and my inherent powers, Banco is awarded attorney fees in the

amount of $41,461.76 and costs in the amount of $11,617.77.  It is

      FURTHER ORDERED that based on my rulings in this Order and those made on

the record at the May 15, 2014 hearing, the Renewed Motion for Rule to Show Cause,

For Order Directing Parties Sign the Settlement Agreement, and for Attorneys' Fees is

**DENIED AS MOOT.**  It is

      FURTHER ORDERED that the Clerk of the Court shall issue a judgment

forthwith and close this case.

      Dated:  September 16, 2014

                              BY THE COURT:


                              s/ Wiley Y. Daniel
                              Wiley Y. Daniel
                              Senior United States District Judge